IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

ZAVIUS AVERETTE, #217 905            *

      Plaintiff,            *

         v.            *            2:06-CV-399-MHT
                                  (WO)

LT. WILLIE COPELAND, *et al.*,            *

      Defendants.            *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Zavius Averette ["Averette"], filed this 42 U.S.C. § 1983 action on May 3, 2006 against Warden Willie Thomas, Lieutenant Willie Copeland, Correctional Officers Annie Latimore and Relford Kendrick, and Nurses Mary Adair and Barbara Pernell.[1] Averette alleges that on August 15, 2004 Lt. Copeland subjected him to excessive force and the state torts of assault and battery by assaulting him in the Shift Commander's Office at the Staton Correctional Facility ["Staton"]. He complains that Defendants Latimore, Thomas, and Kendrick failed to protect him from the assault. Averette also asserts that Officer Kendrick and Nurses Adair and Pernell exhibited deliberate indifference to his medical needs following the excessive force incident. Finally, Averette contends that he was denied due process during disciplinary proceedings. (*Doc. No. 1.*)

_____

[1]These are the defendants who remain as parties to this action. By order entered July 28, 2006 the court dismissed Averette's claims against several other named defendants under the provisions of 28 U.S.C. § 1915(e)(2)(B). (*See Doc. Nos. 5, 15.*)

Averette sues the named defendants in their individual and official capacities. He seeks punitive and compensatory damages against each of the named defendants, removal of defendants from their jobs, and any other relief deemed appropriate to redress the pain and suffering he experienced as a result of the incidents about which he complains. Averette requests trial by jury.

In accordance with the orders of the court, Defendants filed answers, special reports, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Averette that Defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to Averette the proper manner in which to respond to a motion for summary judgment. Averette filed a response to the special reports filed by Defendants. This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, Averette's opposition to the motions, and the supporting and opposing evidentiary materials, the court concludes that Defendant Copeland's motion for summary judgment on Averette's due process claim is due to be granted but his motion is due to be denied with respect to Averette's excessive force and state tort law claims, that Defendant Latimore's motion for summary judgment on Averette's failure to protect and state tort law claim is due to be denied, and that the remaining defendants' motions for summary judgment are due to be granted.

# I.  STANDARD OF REVIEW

In order to survive Defendants' properly supported motions for summary judgment, Averette is required to produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  A plaintiff's conclusory allegations do not provide adequate evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, entry of summary judgment is appropriate. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II. DISCUSSION

*A. Injunctive Relief*

Averette is no longer incarcerated at the Staton. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Averette is no longer incarcerated at Staton, his requests for injunctive and declaratory relief have been rendered moot.

*B. Official Capacity Claims*

As noted, Averette seeks to sue Defendants in their official as well as their individual capacities. "[A] state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state

officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state officials entitled to Eleventh Amendment immunity when sued in their official capacities. Defendants are, therefore, entitled to absolute immunity from the claims asserted by Averette against them in their official capacities.

*C. Individual Capacity Claims*

*1. The Excessive Force Claim*

Defendants argue that they are entitled to qualified immunity on Averette' excessive force claim. The law of this Circuit, however, precludes a defense of qualified immunity in cases alleging excessive force in violation of the Eighth Amendment because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), citing *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). A qualified immunity defense is, therefore, not available when a plaintiff properly pleads the use of excessive force. *Id.* Averette has properly pled a claim of excessive force. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider whether Averette' allegation that Defendant Copeland used excessive force against him, which the court must take as true

5

for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301.

In *Hudson*, the Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injuries. *Id*. 503 U.S. at 9; *but see Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). An excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the

6

use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327.)

The undisputed evidence demonstrates that on August 15, 2004 Averette was incarcerated at Staton. At approximately 11:00 a.m. Lt. Copeland observed Averette in the Staton package room. Because the package room is an unauthorized area of the prison, Lt. Copeland escorted Averette to the Shift Commander's Office.

The material events which occurred from the point of the escort onward are in dispute. Averette alleges that Lt. Copeland, appearing to believe that Averette was masturbating in the package room, entered the room and grabbed him by the shirt collar. Lt. Copeland then pulled out his baton and escorted Averette to the Shift Commander's Office. The door to the office was closed but before opening it Averette contends that Lt. Copeland pushed him into the door twice. Lt. Copeland then opened the door and forced Averette inside. Officer Latimore, who was in present in the office, got up to close the door. Lt. Copeland stated to Averette that he was tired of his shit and then began to beat Averette with his baton. As he beat Averette, Lt. Copeland shouted "bitch I ought to kill you" and "bitch I ought to bust your head." Officer Latimore cautioned Lt. Copeland about hitting Averette in the head. In addition to being beat with the baton, Averette asserts that Lt. Copeland kicked him twice in the chest. Officer Kendrick subsequently arrived at the office after being radioed by Officer Latimore. Lt. Copeland told Officer Kendrick to escort Averette to the infirmary for

a body chart.  After the body chart was completed, Lt. Copeland told Officer Kendrick to retrieve Averette's property and get him new clothes because the clothes he had on were all bloody.  After Averette changed clothes, he maintains that Officer Kendrick asked him for his bloody clothing.  Averette initially refused but states that  after listening to Officer Kendrick beg him for the clothes for thirty minutes he relented.  Officer Kendrick placed the bloody clothes in a brown paper bag then left the holding unit.  (*Doc. No. 1*.)

Lt. Copeland denies violating Avertte's constitutional rights.[2] He states that he observed Averette in an unauthorized area of Staton masturbating.  He escorted Averette to the Shift Commander's Office where he proceeded to reprimand Averette for violating  Rule #38, indecent exposure/exhibitionism,  and Rule #50, being in an unauthorized area.  After informing Averette that he would receive disciplinary reports for his conduct, Lt. Copeland ordered  Averette be held in the holding unit. (*Doc. No. 13, Exh.2 - Copeland Affidavit*.)

Officer Latimore admits that she was present in the Shift Commander's Office when Lt. Copeland arrived with Averette. She denies ever seeing Lt. Copeland strike Averette.  She further denies telling Lt. Copeland not to hit Averette in the head.  (*Doc. No. 13, Exh. 3 - Latimore Affidavit; see also Doc. No. 19, Attachments at pgs. 7-9*.)

---

[2]During an interview with an Investigator for the Intelligence and Investigation Division of the Alabama Department of Corrections, Lt. Copeland specifically denied hitting Averette in any way.  (*Doc. No. 19, Attachments at pgs. 17-18*.)

Officer Kendrick also denies seeing Lt. Copeland strike Averette and asserts he did not see any bruising on him. Officer Kendrick escorted Averette to the infirmary for a body chart per Lt. Copeland's instructions and thereafter placed him in a holding unit pending disciplinary action. Officer Kendrick maintains that he did not beg Averette for any bloody clothes nor did he place any bloody clothes in a brown paper bag. (*Doc. No. 13, Ehx. 4 - Kendrick Affidavit.*)

At the infirmary Averette informed medical personnel that he hurt his arm. In her affidavit Defendant Adair states that Averette received a physical evaluation and it was determined that he had a superficial laceration to his left elbow. Nurse Adair further states that no other bruises or abrasions were noted. After cleansing Averette's elbow laceration, a topical ointment along with a bandage were applied to the injured area and Averette was released to correctional officials. (*Doc. No. 16, Exh. B-2 at 16, Exh. C.*)

Following the August 15, 2004 incident Averette's medical records reflect that he submitted numerous sick calls complaining of pain to his left elbow, his right leg and ankle, and his back.[3] Averette informed medical personnel that his pain and injuries were the result of being in an altercation with a correctional officer who hit him with a stick and threw him to the ground. During a physical exam almost one month after the August 15 incident

---

[3]Averette's medical records reflect that he was a "no show" and or refused treatment in response to several sick calls he submitted regarding pain to his elbow, leg, ankle, and back. (*Doc. No. 16, Exh. B-2 at 5, 6, 11, 12, 14, 17.*)

medical personnel noticed swelling to Averette's left elbow which had pain on flexion and a 2 to 3 centimeter area of hard tissue on the medial aspect of his lower right leg. X-rays of Averette's back, neck and left elbow were taken on September 22, 2004. The x-rays showed no evidence of recent fracture or any other significant bony abnormality. Medical personnel intermittently prescribed Averette Motrin for pain (*Doc. No. 13, Exh. 3 at pg. 4*; *Doc. No. 16, Exh. B-2 at pgs.3-10, 12-17, 46, 88, Exh. B-3 at 30, Exh. C.*)

While Averette's body chart made on August 15, 2004 reflects that he was treated for minor injuries as a result of Lt. Copeland's alleged conduct, the injuries he received are only one factor for consideration. While the absence of serious injury is relevant to an Eighth Amendment inquiry, it does not end this inquiry. *Hudson*, 503 U.S. at 7; *Skrtich*, 280 F.3d at 1304 n.8, citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also Smith v. Mensinger*, 293 F.3d 641, 649 (3rd Cir. 2002) (considering the *de minimis* nature of injuries is an issue of fact to be resolved by the fact finder based on the totality of the evidence); *Brooks v. Kyler*, 204 F.3d 102, 103 (3rd Cir. 2000) (holding that there is "no fixed minimum quantity of injury that a prisoner must prove that he suffered" in order to state an excessive force claim). The court must also consider the need for the application of force, the amount of force exerted, the threat reasonably perceived by the official and any efforts to temper the severity of the forceful response. *Skrtich*, 280 F.3d at 1305 n.9.

According to Averette, Lt. Copeland, without justification, hit him numerous times

with a baton, kicked him in the chest, threw him against a door, and threw him on the ground. Averette maintains that at the time of the assault he posed no threat to the officer. The evidentiary material before the court reflects that Lt. Copeland denies using any force against Averette. Lt. Copeland's denial of Averette's claims create genuine issues of fact which preclude summary judgment. When viewing the facts in the light most favorable to Averette, the court concludes that Lt. Copeland is not entitled to qualified immunity as Averette alleges facts sufficient to survive a motion for summary judgment. *See Skrtich*, 280 F.3d at 1301. Consequently, the motion for summary judgment with respect to the excessive force claim against Lt. Copeland is due to be denied.

### 2. Failure to Protect

#### a. Officer Annie Latimore

Averette alleges that Officer Latimore failed to protect him from the assault by Lt. Copeland. According to the complaint, Officer Latimore was in the Shift Commander's Office when Lt. Copeland arrived there with Averette and remained in and around the office during the entire incident. Averette claims that "[t]hrough the whole thing defendant Latimore watched and other times [s]he would run the inmates off the hallway so they wouldn't see the brutal beating defendant Copeland was putting on me." (*Doc. No. 1 at 9*.)

While Defendants argue that they are protected by qualified immunity, as noted, a defense of qualified immunity is generally unavailable in cases involving excessive force

11

because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich*, 280 F.3d at 1301 (11th Cir. 2002). A defendant is not entitled to qualified immunity when a plaintiff properly pleads excessive force resulting from a failure to protect by the defendants. As discussed, *infra*, Averette has properly pled his claim for relief. Thus, the only question in this case is whether he has alleged facts sufficient to survive a motion for summary judgment. *Id.* Accordingly, this court will consider the sufficiency of Averette' allegation that Officer Latimore failed to protect him from the use of excessive physical force.

Jail officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, Averette is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582

12

(11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Here, Averette asserts that Officer Latimore acted with deliberate indifference by failing to protect him from Lt. Copeland's use of excessive physical force.  Officer Latimore states that at no time did she see Lt. Copeland strike Averette. She further denies telling Lt. Copeland to not hit Averette in the head.  (*Doc.  No. 13, Exh. 3.*)

Based on the previous discussion regarding Defendant Copeland's alleged use of excessive physical force, the facts, when viewed in the light most favorable to Averette, establish that Defendant Latimore had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Averette, that Defendant Latimore actually drew this inference, and thereafter, ignored this risk.  The court, therefore, concludes that Defendant Latimore is not entitled to qualified immunity as Averette has alleged facts sufficient to survive a motion for summary judgment.  Consequently, the motion for summary judgment relative to the alleged deliberate indifference to Averette' safety by

13

Officer Latimore is due to be denied.

    *b. Warden Thomas*

    In his opposition, Averette contends that Warden Thomas, despite having no prior warning that the incident involving Lt. Copeland would occur, acted with deliberate indifference to a substantial risk of harm to his safety. In support of this assertion, Averette maintains that "defendants were aware of a pattern and practice of prisoners being tortured and abused but refused to take adequate measures to abate it or prevent these brutal assaults." (*Doc. No. 24 at 4-5*.) Averette further claims that Warden Thomas failed to investigate the incident concerning Lt. Copeland until after he filed his complaint. (*Id*.)

    The latter claim, even assuming, *arguendo*, it states a violation of any constitutional right to which Averette is entitled, is completely without merit. The evidence before the court reflects that Ed Sasser, an investigator with the Investigation and Intelligence Division of the Alabama Department of Corrections, investigated the August 15, 2004 incident between Averette and Lt. Copeland.[4] Sasser's investigation began on August 24, 2004. He interviewed Averette, Lt. Copeland, Officer Latimore, and inmates Reginald Knight and Frank Walker. Sasser completed his report regarding the August 15 incident on September 28, 2004. Averette did not file his complaint until May 3, 2006. (*Doc. No. 19 and*

---

    [4]Although Sasser's report indicates that the event complained of occurred on August 14, 2004, it appears from a majority of other evidentiary material filed herein that this date was an inadvertent typographical error and that the incident in question did occur on August 15, 2004.

*attachments*.)

In regard to Averette's failure to protect claim against Warden Thomas, the law is established that there is no vicarious liability under § 1983, and a supervisor may be found liable only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); *see generally Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978). As noted, while Averette concedes that Defendant Thomas had no prior knowledge that Lt. Copeland would assault him, he makes the general allegation that Defendants were aware of a pattern of inmate abuse at the prison and failed to take measures to prevent such abuses. Averette, however, has failed to present any colorable evidence of such a pattern or of any knowledge of such a pattern by Warden Thomas or any other named defendant. Averette's general allegation that a pattern of inmate abuse exists is insufficient to bring his claims within the ambit of the type of preexisting, substantial risk of harm situations sufficient to put an official on notice of the need to alleviate the condition. *See Marsh v. Butler County,* 268 F.3d 1014 (11th Cir. 2001). A mere failure to anticipate is insufficient to tie Warden Thomas to the assault against Averette. Thus, he has failed to establish that Warden Thomas acted with deliberate indifference to his safety by failing to protect him from an assault by Lt. Copeland. Accordingly, the motion for summary judgment with respect to Averette's claims against

Warden Thomas is due be granted.

### 3. The Medical Treatment Claims

#### a. Officer Kendrick

The court understands Averette to assert a claim of deliberate indifference against Officer Kendrick for failing to provide him with adequate medical care following the incident with Lt. Copeland. Specifically, Averette contends that during the time that Officer Kendrick was begging him for his bloody clothes, the guard told Averette that would give him anything he wanted in exchange for the clothes including a return visit to the infirmary due to Averette's complaint that his arm was still hurting. After giving Officer Kendrick his dirty clothes Averette complains that the guard "left and never came back." (*Doc. No. 1*.)

Taking as true Averette's claim that Officer Kendrick exhibited deliberate indifference to his serious medical needs by failing to return to the holding unit to take him back to the infirmary for further examination, the claim entitles Averette to no relief. In order to state a valid claim of medical mistreatment under the Eighth Amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed

16

to take steps to abate that risk.  *See Farmer*,  511 U.S. at 834.  It may be demonstrated by either actual intent or reckless disregard.  *Id*.  Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837.

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

According to the complaint, Officer Kendrick was in the infirmary with Averette when medical personnel examined him after the incident in the Shift Commander's Office. (*See Doc. No. 1 at 10*.)  Averette's medical records made at that time reflect that he had a superficial laceration to his left elbow. No other bruises or abrasions were noted. (*Doc. No. 13 at Attachments to Exh. 3*.) While Averette alleges that Officer Kendrick exhibited deliberate indifference to his serious medical needs  by failing to return  him to the health care unit for further examination, he  has provided no verifying medical evidence which

17

establishes that he suffered any detrimental effect as a result of Officer Kendrick's actions

or that this defendant in any way disregarded a substantial risk to his health by delaying

medical treatment. *See generally Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Officer

Kendrick is, therefore, entitled to summary judgment on this claim.

### b. Nurses Pernell and Adair

Averette states that Nurses Adair and Pernell were at the infirmary on August 15,

2004 when he arrived there for a body chart. He alleges that these defendants failed to ask

him about the pain he was feeling at the time, failed to "ask[] or check[] anything else on

[his] body" besides taking care of his elbow, and simply told him he would be alright the next

day. Averette further complains that Nurses Adair and Pernell acted unprofessionally by

laughing about his incident with Lt. Copeland. (*Doc. No. 1*.)

To prevail on his claim against Defendants Pernell and Adair concerning an alleged

denial of adequate medical treatment in violation of the Eighth Amendment, Averette must,

at a minimum, show that they acted with deliberate indifference to his health. *Estelle*, 429

U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only

such indifference that can offend 'evolving standards of decency' in violation of the Eighth

Amendment."). When seeking relief based on deliberate indifference of correctional medical

personnel, an inmate is required to establish "an objectively serious need, an objectively

18

insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or

19

> malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Thus, for Averette to survive summary judgment on his claim of deliberate indifference against Defendants Pernell and Adair, he must show sufficient evidence of a substantial risk of serious harm, Defendants Pernell and Adair's deliberate indifference to that risk, and causation." *Hale*, 50 F.3d at 1582.

The medical defendants' evidence demonstrates that Averette was evaluated pursuant to a Department of Correction's ["DOC"] request for a body chart. Averette complained that his arm was hurt and medical personnel observed a superficial laceration to his left elbow but noted no other bruises or abrasions. Following evaluation and treatment of Averette's injury, medical personnel released him to DOC custody. Averette's medical records fail to show that Defendants Pernell or Adair denied him any necessary treatment or caused him to suffer any injury or damage due to a denial of or a deficiency in medical care. *See Hill*, 40 F.3d at 1188-89 (any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the

detrimental effect of delay in medical treatment). Further, Averette's disagreement with the efficacy of his treatment and/or his desire for a different mode of treatment does not establish a constitutional violation. *Harris*, 941 F.2d at 1505; *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). At best, Averette offers nothing more than his own unsubstantiated opinion about the quality of the medical care he received from Defendants Pernell and Adair on August 15, 2004. His opinions are insufficient to create a genuine issue, and his failure to support his claim of deliberate indifference, by medical or scientific evidence consistent with FED. R. CIV. P. 56 (e), is fatal to it.[5] Defendants Pernell and Adair are, therefore, due to be granted summary judgment on this claim. *Celotex*, 477 U.S. at 322-23.

   *4. The Due Process Claim*

   On August 19, 2004 a disciplinary hearing was held on the charge levied against Averette by Lt. Copeland for violating Rule Number 38 - indecent exposure/exhibitionism. Lt. Copeland, Averette, and inmate witness Reginald Knight testified. Following the hearing, hearing officer Eddie Browning found Averette guilty of the charge and sanctioned

---

[5]While the medical defendants' evidence reflects that Averette continued to seek medical care and treatment for pain to his left elbow, right leg and ankle, and his back for several months after the incident with Lt. Copeland occurred, this evidence does not alter the court's determination that the treatment afforded Averette by Defendants Pernell and Adair on August 15, 2004 rose to the level of deliberate indifference violative of the Constitution.

him to 45 days loss of store privileges, 14 days of extra duty, and a referral to classification for a custody review. (*Doc. No. 13, Attachments to Exh. 3.*)    Averette alleges that Lt. Copeland violated his right to due process by falsely charging him with violation Rule Number 38. Averette also seeks damages against Warden Thomas for his failure to overturn the disciplinary because,  Averette contends, he was "found guilty . . . for something [he] didn't do." (*Doc. No. 1.*)

Averette's claim that he was denied due process in regard to the charged lodged against him for violating Rule Number 38 does not state a violation of his constitutional rights. The Supreme Court has held that prison regulations on confinement of inmates do not create a liberty interest enforceable in a § 1983 action. *Sandin v. Conner,* 515 U.S. 472 (1995).  In *Sandin,* the Court determined that the added restraint of prison discipline "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486.  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976), *quoted in Sandin,* 515 U.S. at 480.

Here, Averette's loss of privileges, assignment to extra duty, and his referral to classification for a custody review, even if due to an alleged false conduct report and unfair

disciplinary proceedings, did not trigger the protections of the Due Process Clause. *Sandin*, 515 U.S. at 480.  Because Averette fails to submit evidence that the discipline he  received as a result of Lt. Copeland's alleged false disciplinary report and/or  procedural irregularities at the hearing amounted to a significant and atypical deprivation in relation to the ordinary incidents of prison life, he does not create a genuine issue that he had a liberty interest in avoiding the discipline imposed. *Id*. at 483-84.  As Averette's claim that he was denied due process at his institutional misconduct hearing fails to state a violation of his constitutional rights, Defendants Copeland and Thomas are due to be granted summary judgment on this claim.

     *5.  The State Law Claims*

     The court understands Averette's complaint to allege state law claims for assault and battery against Lt. Copeland.  Because Alabama has long recognized a cause of action for conspiracy to commit assault and battery,  a defendant need not personally touch the plaintiff to be held liable for an assault and battery.  *See Abney v. Mize,* 155 Ala. 391, 46 So. 230 (1908).  The court, therefore, also concludes that Averette has sufficiently alleged a cause of action against Defendant Latimore for conspiracy to commit assault and battery.  Although Defendants Copeland and Latimore do not specifically address Averette's state law claims, the court understands them to seek summary judgment against Averette on all claims asserted against them.  (*Doc. No. 13*.)

Under Alabama law, assault is defined as "'an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'" *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v. Walker,* 569 So.2d 350, 351 (Ala.1990)). A battery is a successful assault, and consists of touching another in a hostile manner. *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala. 1986). Also, as noted, a defendant need not personally touch the plaintiff to be held liable for an assault and battery. *See Abney,* 155 Ala. 391, 46 So. 230 (approving trial court's jury instruction that "if Ben Abney aided, abetted, or encouraged Dee Abney in entering into or continuing an unlawful assault on plaintiff, then he would be responsible for whatever Dee Abney did in the furtherance of such assault, notwithstanding that he may not have explicitly encouraged, aided, or abetted any one particular act of defendant Dee Abney."); *see also Alabama Pattern Jury Instructions 5.03 (Civil)*; *Deal by and through Barber v. Hill,* 619 So.2d 1347, 1349 (Ala.1993) (citing *Abney, supra*).

As described, *infra,* Averette alleges that Defendants Copeland and Latimore were together during the pertinent time period in question, that Lt. Copeland hit and kicked him and threw him against a door and onto the ground and that Officer Latimore both watched Lt. Copeland assault him and  acted as a lookout by running inmates off the hallway to

prevent them from observing Lt. Copeland's actions. The court, therefore, concludes that Averette has sufficiently alleged a cause of action for assault and battery against Lt. Copeland and sufficiently alleged a cause of action for conspiracy to commit assault and battery against Officer Latimore. Accordingly Defendants Copeland and Latimore's dispositive motion on Averette's state law claims is due to be denied.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants Thomas, Kendrick, Pernell, and Adair's motions for summary judgment (*Doc. Nos. 13, 16*) be GRANTED and these parties be DISMISSED as defendants to this cause of action;

2. Defendant Copeland's motion for summary judgment on Plaintiff's due process claim (*Doc. No. 13*) be GRANTED;

3. Defendant Copeland's motion for summary judgment on Plaintiff's excessive force claim (*Doc. No. 13*) be DENIED;

4. Defendant Latimore's motion for summary judgment on Plaintiff's failure to protect claim (*Doc. No. 13*) be DENIED;

5. Defendant Copeland motion for summary judgment on Plaintiff's supplemental state law claims for assault and battery (*Doc. No. 13*) be DENIED;

6. Defendant Latimore's motion for summary judgment on Plaintiff's supplemental

state law claim for conspiracy to commit assault and battery (*Doc. No. 13*) be DENIED; and

7.  Plaintiff's excessive force claim and supplemental state law claims for assault and battery against Defendant Copeland, and Plaintiff's failure to protect claim and supplemental state law claim for conspiracy to commit assault and battery against Defendant Latimore, be SET for trial by jury.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **July 8, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

Done, this 26th day of June 2008.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE